**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MURIEL BECK, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CNO FINANCIAL GROUP, INC., et al., | : | No. 17-4300 |
|     Defendants. | : | |

**MEMORANDUM**

Schiller, J.                                                                                                                                                               June 14, 2018

       Muriel Beck sued her former employer, CNO Financial Group, Inc., alleging that it fired her in retaliation for her filing an OSHA complaint and seeking unemployment compensation after she took medical leave in connection with a bug infestation in her workplace. Beck claims that CNO's action violated Pennsylvania public policy. Defendants filed a Motion to Dismiss, arguing that there is no Pennsylvania public policy to support Beck's OSHA-based claim, and that even if there is, the claim is precluded under Pennsylvania law. For the reasons discussed below, the Court disagrees, and Defendants' motion is denied.

**I.**     **BACKGROUND**

       Beck began working in CNO's Philadelphia call center in August 2016. (Second Am. Compl. [SAC] ¶ 8.) In March 2017, Beck and four of her co-workers began noticing numerous bug bites on their bodies. (*Id.* ¶¶ 9–10.) According to Beck, the call center had significant problems with mice, bed bugs, and other pests, so much so that CNO hired a pest control company to treat the office monthly. (*Id.* ¶ 11.)

       Beck filed a complaint with the Occupational Safety and Health Administration (OSHA) regarding the bed bugs and significant mouse droppings. (*Id.* ¶ 12.) She also saw her doctor

about her bug bites, who directed her to take medical leave for two weeks, until March 27, 2017. (*Id.* ¶ 13.) Beck notified her supervisor that she would be taking medical leave, and he approved, telling her to take leave until she was able to return. (*Id.* ¶¶ 14, 17.) However, because Beck was an hourly worker, she would not receive wages during her medical leave unless CNO's insurance provider approved. (*Id.* ¶ 18.) Because of this, Beck applied for and received partial unemployment compensation. (*Id.* ¶ 19.)

Beck did not return to work on March 27 because she continued to suffer from the bug bites. (*Id.* ¶ 20.) On March 31, 2017, CNO fired Beck. (*Id.* ¶ 23.) It informed her that she was being terminated for "abandonment" of her work from March 20 to March 23. (*Id.*) Beck alleges, however, that CNO had previously approved her medical leave request through March 27 and permitted her to extend the leave period if necessary. (*Id.* ¶ 24.) According to Beck, her termination was actually retaliation for her OSHA complaint and partial unemployment claim. (*Id.* ¶ 25.) She claims that CNO received notice of both and was unhappy. (*Id.* ¶¶ 21–22.)

Beck initially sued CNO, the manager of its human resources department, and several John Doe defendants. (Compl. (ECF No. 1) ¶¶ 2–4.) She has amended her complaint twice after CNO filed motions to dismiss the first two complaints. (*See* ECF Nos. 9, 16.) In her Second Amended Complaint, Beck asserts a claim for wrongful discharge based on Pennsylvania public policy related to her OSHA complaint and unemployment compensation claim. Defendants now include CNO Financial Group, CNO Services, LLC, Bankers Life & Casualty Co., and the John Doe defendants.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the federal rules do not impose a probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the court can only infer "the mere possibility of misconduct," the complaint must be dismissed because it has failed to show that the plaintiff is entitled to relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

## III. DISCUSSION

Pennsylvania has an "extremely strong" presumption that all non-contractual employment relationships are at-will. *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000). Thus, employees generally have no cause of action for wrongful discharge. However, Pennsylvania courts have recognized a very limited exception to this rule if the termination threatens a clear mandate of Pennsylvania public policy. *E.g. Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009). Pennsylvania public policy "is to be ascertained by reference to

[Pennsylvania] laws and legal precedents and not from supposed public interest." *Shick v. Shirey*, 716 A.2d 1231, 1237 (Pa. 1998).

Beck claims that her firing violated Pennsylvania public policy with respect to both the filing of her OSHA complaint and her application for unemployment benefits. Defendants argue that Beck's wrongful discharge claim lacks a nexus to a clearly established Pennsylvania public policy, and that even if a public policy existed, the existence of statutory remedies under the Occupational Safety and Health Act (OSH Act) and the Pennsylvania Worker and Community Right-to-Know Act (PWCRA) precludes her claim.[1] The Court considers these two arguments in turn, and finds that there is public policy to support Beck's claim and that the statutory remedies do not preclude her claim.

A.  **Pennsylvania Public Policy**

Courts in this district have found that Pennsylvania public policy is threatened if an employer fires an employee for engaging in protected activity under the OSH Act. *See Chiaradonna v. Rosemont Coll.*, Civ. A. No. 06-1015, 2008 WL 282253, at *7 (E.D. Pa. Jan. 31, 2008); *Wetherhold v. RadioShack Corp.*, 339 F. Supp. 2d 670, 682 (E.D. Pa. 2004). In *Wetherhold*, the court looked to the PWCRA, which instructs that it is "to be read in conjunction with" the OSH Act, to ascertain this public policy. *Wetherhold*, 339 F. Supp. 2d at 681. The PWCRA, a Pennsylvania statute, "clearly implicates and defines the public policy of [Pennsylvania]." *Id.*

The PWCRA contains an anti-retaliation provision that states that "[n]o employer shall discharge or cause to be discharged, or otherwise discipline or in any manner discriminate

---

[1] Defendants do not seek to dismiss Beck's claim that she was fired in retaliation for filing a partial unemployment compensation claim. Pennsylvania courts recognize wrongful discharge claims based on retaliation for workers' assertion of rights to unemployment benefits. *Highhouse v. Avery Transp.*, 660 A.2d 1374, 1378 (Pa. Super. Ct. 1995).

4

against, an employee because the employee has filed a complaint" or engaged in other activity protected under the PWCRA. 35 P.S. § 7313(a); *see also Wetherhold*, 339 F. Supp. 2d at 678 (noting that this provision bars employers "from terminating an employee as a result of the employee's complaint or protest regarding harmful and unsafe conditions in the workplace"). This provision "reflects the same public policy expressed by the federal government under [the OSH Act]." *Wetherhold*, 339 F. Supp. 2d at 681. Specifically, § 7313(a) parallels the OSH Act's anti-retaliation provision, which prohibits an employer from firing or discriminating against an employee because she filed a complaint under the statute. 29 U.S.C. § 660(c)(1).

The anti-retaliation provisions in the PWCRA and the OSH Act are significantly similar. Because of this, the Court agrees with the *Wetherhold* court that the PWCRA establishes a Pennsylvania public policy barring employers from retaliating against employees who file a complaint under either the PWCRA or the OSH Act. *See Wetherhold*, 339 F. Supp. 2d at 682 ("The PWCRA must be read in conjunction with the OSH Act and the termination of an employee for filing a complaint under either of those laws, with either the applicable federal or state agency, is a violation of the PWCRA."). Thus, Beck's wrongful discharge claim based on Defendants' alleged retaliation for her OSHA complaint is supported by Pennsylvania public policy.

### B. Statutory Remedies

Defendants also argue that Beck's wrongful discharge claim must be dismissed because she had statutory remedies available under the OSH Act and the PWCRA to vindicate her rights. Defendants assert that Pennsylvania courts recognize common law wrongful discharge claims based on public policy only where there is no statutory remedy. (Defs.' Mot. to Dismiss at 5 (citing *Darlington v. Gen. Elec.*, 504 A.2d 306, 318 (Pa. Super. Ct. 1986).)

This argument finds some support in Pennsylvania caselaw. *See, e.g.*, *Darlington,* 504 A.2d at 318 ("Pennsylvania recognizes a cause of action for wrongful discharge 'only in the absence of a statutory remedy. . .'"); *Jacques v. AKZO Int'l Salt, Inc.*, 619 A.2d 748, 753 (Pa. Super. Ct. 1993) ("It is well-settled that the courts will not entertain a separate common law action for wrongful discharge where specific statutory remedies are available."). However, a more thorough examination of the cases leads the Court to conclude that Defendants' statement of the law is incomplete, and that the availability of remedies under the OSH Act and the PWCRA does not preclude Beck's wrongful discharge claim.

Many of the cases addressing the statutory remedy limitation have involved wrongful discharge claims based on the Pennsylvania Human Relations Act (PHRA). *See, e.g.*, *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 918 (Pa. 1989); *Wolk v. Saks Fifth Ave., Inc.*, 728 F.2d 221 (3d Cir. 1984). It appears to be well-settled that the PHRA, by its terms, precludes a common law wrongful discharge claim. *Clay*, 559 A.2d at 918; *Weaver*, 975 A.2d at 567 n.10. Outside of that context, the caselaw regarding statutory remedies is limited.

However, another Pennsylvania case suggests to the Court that Beck's claim is not precluded by the available statutory remedies. In *Field v. Philadelphia Electric Co.*, the Pennsylvania Superior Court allowed a common law wrongful discharge claim based on an alleged retaliatory firing in connection with the federal Energy Reorganization Act (ERA). 565 A.2d 1170, 1182 (Pa. Super. Ct. 1989). The plaintiffs claimed that they were fired from their jobs at a nuclear plant because one of them reported violations of Nuclear Regulatory Commission regulations to the Commission, as he was required to do under the ERA. *Id.* at 1180. On appeal, the defendants argued that the plaintiffs were barred from bringing a wrongful discharge claim because the ERA provided a statutory remedy. The defendants relied on *Clay*, in which the

Pennsylvania Supreme Court rejected a wrongful discharge claim based on a violation of the PHRA because, it said, the PHRA provides a mandatory administrative complaint procedure. *See Clay*, 559 A.2d at 919. The defendants asked the court in *Field* to treat the ERA's administrative complaint procedure as similarly exclusive and dismiss the plaintiffs' wrongful discharge claim. *Field*, 565 A.2d at 1181.

The *Field* court rejected the defendants' argument and held that the plaintiffs could assert a wrongful discharge claim despite the existence of an administrative complaint procedure in the ERA. *Id.* at 1182. The court based this holding on two important differences between the complaint procedures in the ERA and the PHRA. First, the court explained, while "the PHRA provides that an employee's right to be free from prohibited discrimination *shall* be enforceable as set forth in the PHRA," the ERA states that "an employee who has been discharged for reporting NRC violations *may* file a complaint with the Department of Labor." *Id.* at 1181 (internal quotation marks removed; emphasis added). The court concluded from the ERA's use of permissive language that, in contrast to the PHRA, its complaint procedure "was not intended to be the exclusive means of enforcing the ERA." *Id.*

The second difference the court observed between the two statutes was with regard to the administrative bodies they designated to handle employee complaints. In the PHRA, the Pennsylvania legislature created a "special administrative body . . . designed to deal solely with prohibited discrimination." *Id.* This demonstrated a legislative preference to have discrimination claims adjudicated by the agency rather than the courts. *Id.* Meanwhile, no similar agency was created under the ERA. Instead, the Department of Labor was given authority to handle complaints. *Id.* Since the Department of Labor did not have special expertise in resolving ERA

7

violations, the court concluded that Congress did not intend for the administrative complaint procedure to be the sole avenue available to employees to bring retaliation complaints. *Id.*

Because of these distinctions between the ERA and the PHRA, the *Field* court determined that the existence of a statutory remedy in the ERA did not preclude employees from bringing wrongful discharge claims based on public policy related to the ERA. *Id.*

In this case, Beck filed a complaint under the OSH Act, not the ERA. However, the *Field* court's analysis is highly persuasive here because the language of the OSH Act largely parallels the ERA's language with regard to retaliation and the administrative complaint procedure. *Compare* 29 U.S.C. § 660(c) (OSH Act) *with* 42 U.S.C. 5851(b) (ERA). Like the ERA, the OSH Act provides that an employee who believes that her rights under the statute have been impinged "may" file a complaint. § 660(c)(2). Moreover, the OSH Act, like the ERA, did not create a special administrative body to "deal solely with prohibited discrimination." *Id.* Instead, it likewise gave the Department of Labor authority to investigate complaints. *Id.* Nothing in the statute suggests Congress intended for the Department to employ special expertise in resolving allegations of retaliation. *Cf. Field*, 565 A.2d at 1181.

In short, the same considerations the *Field* court took into account in allowing a wrongful discharge claim related to the ERA are equally relevant to the OSH Act. Because of this, the Court concludes that Pennsylvania courts would allow a wrongful discharge action based on violations of the OSH Act.

As Defendants note, the PWCRA also provides a statutory remedy to employees alleging retaliation. (Mot. to Dismiss at 5 (citing 35 P.S. § 7314).) However, the PWCRA remedy essentially parallels the OSH Act's and the ERA's, in that it provides that an employee "may file a complaint" with the Pennsylvania Department of Labor and Industry regarding a retaliatory

8

discharge, and gives the Department authority to investigate complaints. *See* 35 P.S. §§ 7313–14. Thus, the above analysis applies to the PWCRA as well, and the Court believes the *Field* holding would also extend to this statute.

Because the Court finds that the holding in *Field* extends to the OSH Act and the PWCRA, Beck's wrongful discharge claim is not precluded by the statutory remedies that these laws provide.

### IV. CONCLUSION

The PWCRA establishes a Pennsylvania public policy against allowing employers to fire employees in retaliation for filing a complaint alleging violations of either the PWCRA or its federal counterpart, the OSH Act. Because of this, and because the OSH Act and PWCRA do not provide exclusive remedies, the Court holds that Beck has stated a claim. Defendants' Motion to Dismiss is therefore denied. An appropriate Order will be docketed separately.